**UNITED STATES of America,**
**Appellee,**

v.

**Garland William BOGGUS, Appellant.**

**No. 23222.**

United States Court of Appeals
Ninth Circuit.

May 5, 1969.

Rehearing Denied June 20, 1969.

Rubin Salter, (argued) Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Jo Ann D. Diamos, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before HAMLIN, ELY and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

Appellant, Garland William Boggus, was convicted after a jury trial of smuggling gold into the United States in violation of 18 U.S.C. § 545, and was given a probationary sentence. He now appeals. We affirm.

The appeal presents the following questions:

1. Was appellant required to invoice the gold he brought into the United States?

2. Was the evidence sufficient to support a jury finding that appellant smuggled the gold into the United States with intent to defraud the United States?

3. Was the evidence presented by the government agent obtained in violation of appellant's constitutional rights?

4. Did the requirement that appellant declare the gold he brought into the United States violate his privilege against self-incrimination?

Appellant and Alvin Hartley (a co-defendant) traveled to Mexico in July, 1967 to investigate purchasing gold bars which were to be resold later to people in Miami, Florida. Appellant and Hartley were shown two bars of gold; to test their purity, appellant drilled both bars and placed the shavings (approximately 6.2 grams) in a piece of paper in his shirt pocket. Appellant and Hartley then returned to the United States to have the gold shavings analyzed; at the border they stated they had not bought anything, but they did not declare the gold as required by law.

After returning to their motel room in Nogales, Arizona, appellant received a telephone call from a customs agent who pretended to be Ed Franks, the agent representing the Miami buyers. The next morning, the customs agent, still

B. Michael Dann, (argued) of Kramer, Roche, Burch, Streich & Cracchiolo, Phoenix, Ariz., for appellant.

posing as Ed Franks, visited appellant and Hartley at their motel room. The agent saw the gold shavings, discussed the sale of gold bars with appellant, was told by appellant that 15 tons of gold were available, and elicited promises from appellant that they, Boggus and Hartley, would bring the gold across the border. Appellant and Hartley were then arrested. The customs agent testified at the trial about what he saw and heard in appellant's motel room, over appellant's objection. The charge against Hartley was dismissed, and he also testified for the government.

## I.

Appellant contends that he was not required to invoice the gold he brought into the United States as charged in the indictment, and therefore his conviction must be reversed.

■ The indictment, following the language of the statute, charged that appellant "* * * wilfully and knowingly, and with intent to defraud the United States of America, did smuggle and clandestinely introduce into the United States of America at the Port of Nogales, merchandise, that is, approximately six and two-tenths (6.2) grams of gold shavings, which should have been invoiced, all in violation of 18 U.S. C. § 545." Thomas v. United States, 314 F.2d 936 (5 Cir.1963), a marihuana case, discussed the phrase "should have been invoiced" as used in the smuggling statute and concluded, "* * * the word 'invoiced', as used therein, carries the meaning attached to it in the customs law, viz., lawfully entered or declared." (314 F.2d 938). We agree with this interpretation of the statutory language as applied to this case. There are statutory provisions requiring entry and declaration of goods at the border. Current v. United States, 287 F.2d 268 (9 Cir.1961), held that 19 U.S.C. § 1461 applied to a non-commercial importer and furnished the statutory requirement for the language in the indictment in that case which alleged the marihuana

"had not been presented for inspection, entered and declared."

■ The regulations also are pertinent. 19 CFR § 10.19 is headed "Declaration and entry" and provides that "All articles brought into the United States by any individual shall be declared to a customs officer," at the port of first arrival. 31 CFR § 54.8 requires the declaration to Customs of all gold brought into the United States. Thus, appellant was required to invoice (enter and declare) the gold, and the government proved that he failed to do so, as charged in the indictment.

The essence of the charge, laid under the first paragraph of 18 U.S.C. § 545, was the words "did smuggle and clandestinely introduce * * * merchandise." Thomas v. United States, supra, states, "No additional element of the offense of smuggling marihuana exists by virtue of the phrase 'which should have been invoiced'." (314 F.2d at 938).

■ We think that the phrase "which should have been invoiced" was to make clear what type of merchandise was placed under the ban of the statute. Only that merchandise, which was required to be entered and declared, was included.

■ Appellant discusses the 5 day period for entry in 19 U.S.C. § 1484. We doubt that the section has any application to our problem, since it imposes duties only on a "consignee." See Current v. United States, supra, 287 F.2d at 269. But passing the consignee limitation, the section could not apply to the first paragraph of 18 U.S.C. § 545. Once a person has *smuggled* something into the country it would be senseless to provide he had five days *thereafter* to enter and declare it and wash away his crime. We do not discuss the possible application of 19 U.S.C. § 1484 to the second paragraph of 18 U.S.C. § 545, concerning importing or bringing merchandise into the United States.

We conclude appellant's contention is without merit.

## II.

Appellant contends the evidence was not sufficient to show that he smuggled the gold into the United States with intent to defraud the United States. He contends that he did not surreptitiously conceal the gold shavings and that he had no fraudulent intent since the gold shavings did not have any commercial value as required by Current v. United States, supra, 287 F.2d at 270.

We believe there was ample evidence to show, as the jury found, that appellant wilfully and knowingly smuggled the gold. "Intent to defraud the United States" means intent to avoid and defeat the United States customs laws (see, United States v. Kushner, 135 F.2d 668, 671–672 (2 Cir.), cert. denied, 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850 (1943) ); there was ample evidence to show appellant intended to avoid the customs laws, since those laws would have prevented him from bringing the gold into the United States. Moreover, the gold shavings did have some value, since 6.2 grams (approximately one-fifth ounce) would be worth about seven dollars. We find appellant's challenge to the sufficiency of the evidence to be without merit.

## III.

Appellant contends the verbal and tangible evidence obtained by the government agent, who intruded by stealth, was the result of an unlawful entry into appellant's room in violation of the Fourth Amendment, and was thus inadmissible. In Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), a factually similar case, the United States Supreme Court rejected this contention, stating (385 U.S. at 211, 87 S.Ct. at 427): "But when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant." We believe Lewis controls this case; we therefore find no violation of appellant's Fourth Amendment rights.

## IV.

Appellant contends the requirement that he declare the gold he brought into the United States violates his privilege against self-incrimination. He relies on the recent United States Supreme Court cases finding Fifth Amendment violations in various registration statutes, to wit, Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965) (federal law requiring Communist party members to register); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) (federal law requiring gamblers to register and pay excise and occupational tax); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) (federal law requiring registration of certain firearms). In all the cases cited by appellant, a person who registered pursuant to the statute risked criminal punishment. However, under 31 CFR § 54.8, when a person without a license declares gold at the border, the Customs Service merely detains the gold until the person importing it obtains the proper license. Thus, no criminal punishment is risked by complying with the statute and declaring the gold, even though the importer has no license to lawfully bring it into the United States. We therefore find no violation of appellant's privilege against self-incrimination under the principles set forth in Albertson, Marchetti, and Haynes.

The judgment of the district court is affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. This is a trifling case which should not have been prosecuted. After the government agent had gained admittance to the appellant's

dwelling, and after his discovery of the tiny particles of gold and his conversations with the appellant, he contacted the United States Attorney's office by telephone and expressed his opinion that the appellant had committed no offense. Notwithstanding, an indictment and the conviction followed. While the district judge was lenient in the imposition of penalty, the appellant now bears the burdens of a felon. 18 U.S.C. § 1.

My analysis of the record convinces me that we should not permit the judgment of conviction to stand. As I see it, the appellant was, in truth, convicted, not for an offense which had been committed but for an offense which may have been contemplated and never accomplished. I interpret the majority's reliance upon Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), as confirmative of this view. Lewis stands for the proposition that if one invites an undercover agent to his home for the specific purpose of feloniously selling narcotics therein, the introduction of incriminating evidence obtained by the undercover agent in the home is not barred by the Fourth Amendment. Here, the conviction rests upon the assumption that the offense was committed at the time the appellant crossed the border, not thereafter. Hence, the consent given by the appellant to the agent's entry of his room could not, as in Lewis, have been given for the purpose of committing the felony in the room. It seems to me that the facts of the present case more nearly fit those presented in Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L. Ed. 647 (1921), which the Supreme Court in Lewis did not pretend to overrule. In Gouled, an undercover agent, an acquaintance of the accused, gained the challenged consent to entry on the pretense that his call was friendly. The Supreme Court held that the introduction of the incriminating evidence obtained as a result of the friendly "visit" infringed Gouled's fourth amendment rights. Said the High Court:

"The prohibition of the Fourth Amendment is against all unreasonable searches and seizures and if for a government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers would be an unreasonable and therefore a prohibited search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion. The security and privacy of the home or office and of the papers of the owner would be as much invaded and the search and seizure would be as much against his will in the one case as in the other, and it must therefore be regarded as equally in violation of his constitutional rights."

255 U.S. at 305–306, 41 S.Ct. at 263.

The whole record convinces me that the evidence in this case was insufficient to support appellant's conviction of the offense for which he was indicted and tried. The majority holds, as it must in order to sustain the conviction, that the minute quantity of gold shavings "should have been invoiced." Relying upon Thomas v. United States, 314 F.2d 936 (5th Cir.), cert. denied, 375 U. S. 849, 84 S.Ct. 105, 11 L.Ed.2d 76 (1963), the majority equates "invoiced" with "lawfully entered or declared." I do not agree with the rationale of Thomas, believing that the Fifth Circuit's interpretation of the statute in question was strained. I do not believe that the evidence justified the implied determination that the gold shavings in this case constituted "merchandise," and I have more difficulty in accepting the additional determination that it was merchandise "which should have been invoiced." Assuming that the gold shavings constituted "merchandise," the appellant might have been more properly convicted had he been charged under the second paragraph

of 18 U.S.C. § 545, which proscribes the importation of "any merchandise contrary to law" or under an allegation of unlawful conspiracy. *See,* 18 U.S.C. § 371.

Let us suppose that a Mexican dentist had inserted a gold filling into one of the appellant's teeth while appellant was present in Mexico. Had he possessed no other gold upon his reentry into the United States, would the majority have upheld his conviction for the offense which was charged here, namely, the smuggling of "merchandise which should have been invoiced."? I put this rhetorical question, assuming that there would have been evidence that at some future time the appellant might have undertaken to import, unlawfully, a bar of gold from which one-fifth ounce of the mineral had been taken for the dental treatment.

I would reverse.