479 F.2d 4
 Fed. Sec. L. Rep. P 94,016
SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
RADIO HILL MINES CO., LTD., et al., Defendants, Sidney
Stein, Defendant-Appellant.
Application of Sidney STEIN for a Writ of Habeas Corpus,
Sidney Stein, Relator-Appellant.
 Nos. 279-281, Dockets 72-1615, 72-1746 and 72-1747.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 25, 1972.
Decided May 25, 1973.
 
 Sidney Feldshuh, New York City (Feldshuh & Frank, New York, N. Y., Richard Weinberger and Robert Bartels, New York City, of counsel), for defendant-appellant and relator-appellant.
 Jacob H. Stillman, Asst. Gen. Counsel, S. E. C., Washington, D. C. (Walter P. North, Acting Gen. Counsel, Frederick L. White, Atty., S. E. C., Washington, D. C., of counsel, for plaintiff-appellee.
 Before MOORE, HAYS and MULLIGAN, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 Defendant-appellant Sidney Stein appeals from three orders of the United States District Court for the Southern District of New York, Charles H. Tenney, Judge, issued in connection with an application by the Securities and Exchange Commission (SEC) to adjudge Stein in civil contempt for failure to comply with a preliminary injunction. Two of these orders were issued in the pending injunctive action-an order of May 22, 1972, found Stein in contempt for failure to comply with the reporting provisions of a preliminary injunction, and a commitment order of June 9, 1972, directed that Stein be confined until he did so comply. The third order which is here appealed denied an application for a writ of habeas corpus in a proceeding brought to obtain Stein's release from confinement.
 
 I.
 
 2
 The preliminary injunction was issued on November 5, 1970, upon motion of the SEC. After a seven-day evidentiary hearing on the motion then District Judge Mansfield found that Stein and three others had participated in a scheme that violated the registration and antifraud provisions of the Securities Act of 1933 (15 U.S.C. Sec. 77e(a), (c), 77q(a)) and the antifraud provisions of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and Rule 10b-5 promulgated thereunder (17 CFR 240.10b-5). Judge Mansfield's order required that each defendant submit to the Commission within thirty days of the entry of the decree, a complete record of all securities owned by him either of record or beneficially, and thereafter to submit quarterly reports of all of his securities transactions.
 
 
 3
 Stein did not comply with this order. Instead, on December 16, 1970, some eleven days after the initial report to the SEC was due, Stein appealed that order. No stay of the order pending appellate review was sought. By letter dated December 22, 1970, Stein informed the SEC that he did not intend to submit the ordered reports on the ground that to do so would tend to incriminate him in violation of his rights under the Fifth Amendment.
 
 
 4
 On July 7, 1971, the SEC filed a notice of motion before Judge Tenney to adjudge Stein in contempt for failing to comply with the November 5th order. Before any decision was reached on its contempt motion, the SEC, on January 20, 1972, moved to dismiss Stein's appeal of the November 5th preliminary injunction. The motion was unopposed by Stein. On February 15, 1972, fourteen months after the notice of appeal had been filed, this Court dismissed that appeal for want of prosecution.
 
 
 5
 On May 4, 1972, Judge Tenney issued a Memorandum Opinion in which he found Stein in contempt for failing to file the required reports with the SEC. On June 7, 1972, new counsel for Stein sought to have the dismissal of Stein's appeal of the preliminary injunction vacated. This Court denied that application. On June 9, 1972, Judge Tenney signed a commitment order which provided that Stein be incarcerated until he purged himself of his contempt. On June 13, 1972, Stein's attorneys sought stays of the contempt and commitment orders. These stays were denied and Stein was confined in the Federal House of Detention. On June 15, 1972, Stein's attorneys filed a petition for a writ of habeas corpus asserting Stein's Fifth Amendment privilege as the basis for that petition. When the petition was denied, Stein purged himself of the contempt by filing the required reports and was released from custody.
 
 
 6
 We affirm the orders of the court below by which Stein was found in contempt and incarcerated; we further affirm the denial of Stein's petition for a writ of habeas corpus.
 
 II.
 
 7
 Stein has attacked the reporting provision of Judge Mansfield's preliminary injunction[1] on three grounds. He asserts that this provision is invalid because (1) there is no statutory authority for such reports in the Securities Acts, (2) all of the securities reporting requirements which Congress intended to permit are specifically provided for in the statutes, and (3) the required reports constitute an unreasonable search and seizure in violations of Stein's Fourth Amendment rights.
 
 
 8
 "It is now well established that [the Securities Act of 1933 and the Securities Exchange Act of 1934] confer general equity powers upon the district courts." SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103 (2d Cir. 1972). See also, SEC v. Texas Gulf Sulphur Co., 446 F.2d 1301, 1307 (2d Cir.), cert. denied, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971), reh. denied, 404 U.S. 1064, 92 S.Ct. 733, 734, 30 L.Ed.2d 753 (1972). The Supreme Court has held that in appropriate instances there is authority in equity "to use quite drastic measures" to insure compliance with the law. United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 726, 64 S.Ct. 805, 88 L.Ed. 1024 (1944).
 
 
 9
 Despite appellant's contention to the contrary, we believe that the existence of certain reporting requirements within the Securities Acts (see, e. g., Secs. 13 and 14(d) of the Securities Exchange Act of 1934, 15 U.S.C. Secs. 78m and 78n (d)) does not preclude a court, acting in the exercise of its equitable powers in an appropriate case, from designing additional reporting requirements which may be necessary to insure compliance with an injunction. Indeed, in United States v. E. I. duPont deNemours & Co., 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961) the Court declared:
 
 
 10
 [I]t is well settled that once the Government has successfully borne the considerable burden of establishing a violation of law, all doubts as to the remedy are to be resolved in its favor.
 
 
 11
 Id. at 334, 81 S.Ct. at 1254 (footnote omitted)
 
 
 12
 It is clear beyond cavil that the district court did have the power to impose upon Stein the reporting provision included as ancillary relief in its preliminary injunction.
 
 
 13
 Given the power to impose the reporting requirement, the district court could properly do so only if the circumstances of this case justified this relief. In determining the propriety of the preliminary injunction sought by the SEC, Judge Mansfield conducted an evidentiary hearing which extended over seven days. As the court stated in its Findings and Conclusions and as the preliminary injunction itself reiterates, at these hearings the SEC established to the court's satisfaction that the "defendants have been engaged in, and unless enjoined will continue to engage in, acts and practices which constitute violations of * * * the Securities Act of 1933 * * * [and] the Securities Exchange Act of 1934 * * *." Findings and Conclusions, 70 Civ. 3286, November 4, 1970; Order of Preliminary Injunction, November 5, 1970.
 
 
 14
 The hearings established that Stein had orchestrated an elaborate scheme which violated the registration and antifraud provisions of the securities laws and which defrauded securities brokerdealers of approximately $132,000. At these hearings the SEC also demonstrated Stein's practice of concealing his participation in securities transactions by the use of nominees and other devices. Because the court's preliminary injunction has the primary purpose of prohibiting Stein from violating the securities laws, the SEC convincingly argued that the reporting provision was a necessary form of ancillary relief which would aid the principal purpose of the injunction.
 
 
 15
 We find that on the facts of this case the reporting provision of the November 5th injunction was and is an appropriate exercise of the district court's equity powers. We further find that the provision, as a necessary adjunct of the preliminary injunction, is neither vague nor overly broad.
 
 III.
 
 16
 Stein asserts that even if the reporting provision of the preliminary injunction is valid, his Fifth Amendment privilege against self-incrimination is an absolute defense to complying with the provision. In his Memorandum Opinion of May 4, 1972, by which Stein and two other defendants were held in contempt, Judge Tenney found that by abandoning his appeal of the preliminary injunction (that appeal was dismissed for want of prosecution on February 15, 1972), Stein had waived his right to assert this privilege and thus would not be permitted to attack the preliminary injunction collaterally by way of a contempt proceeding. We do not reach the issue of waiver since we find no constitutional defects in the preliminary injunction itself.
 
 
 17
 In California v. Byers, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971) the Court considered a statute which required a motorist involved in an accident to stop and give his name and address. In his plurality opinion Chief Justice Burger noted that the California statute did not require the disclosure of information which entailed a "substantial risk of self-incrimination * * *.
 
 
 18
 Furthermore, the statutory purpose is noncriminal and self-reporting is indispensable to its fulfillment." 402 U.S. at 431, 91 S.Ct. at 1539. Chief Justice Burger further noted that "Driving an automobile * * * is a lawful activity", 402 U.S. at 431, 91 S.Ct. at 1539, and that automobile drivers are not a group "inherently suspect of criminal activities." Id., citing Albertson v. Subversive Activities Control Board, 382 U.S. 70, 79, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965). The Albertson case also pointed out the significance of determining whether the claim of self-incrimination is in an "essentially noncriminal and regulatory area of inquiry." Id.
 
 
 19
 It is clear that securities regulation is an "essentially noncriminal and regulatory area of inquiry." Id. The reporting provision here challenged requires disclosure of Stein's beneficial and record ownership of securities. Such ownership is generally a completely "lawful activity", Byers, supra, 402 U.S. at 431, 91 S.Ct. 1535, and disclosure of such ownership is not an admission of an "inherently suspect" activity, Albertson, supra, 382 U.S. at 79, 86 S.Ct. 194. We, therefore, conclude that the reporting provision of the preliminary injunction is proper in the circumstances of this case and that interposition of a Fifth Amendment claim, if appropriate, would be of no aid to appellant Stein.
 
 IV.
 
 20
 As part of this consolidated appeal Stein has also challenged the denial of his petition for a writ of habeas corpus, by which he sought release from federal custody which had been ordered as a result of his having been found in contempt of court. Since Stein has purged himself of his contempt and thus effected his own release from custody, the appeal as to this order is dismissed as moot.
 
 
 21
 We have considered appellant's remaining arguments and find them to be without merit.
 
 
 22
 In conclusion, we affirm in all respects the orders of the court below.
 
 
 
 [1]
 It Is Further Ordered that Sidney Stein, Albert Feiffer, Norman Rubinson and Harry Silber and any entities under their control are required to report to the New York Regional Office of the Securities and Exchange Commission all of their securities transactions in the following manner:
 A. Within 30 days of the entry of this judgment a complete record of all securities owned beneficially or of record by them; and
 B. By the tenth day after the close of every calendar quarter commencing with and including the fourth quarter of 1970, a complete record of all transactions within the preceding quarter.
 Order of Preliminary Injunction, November 5, 1970.