[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10292

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2010
JOHN LEY
CLERK

D.C. Docket No. 08-10057-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ONECHE GARCIA-CORDERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 29, 2010)

Before TJOFLAT and COX, Circuit Judges, and KORMAN,[*] District Judge.

COX, Circuit Judge:

The issue presented in this case is apparently one of first impression: whether,

as applied to a defendant smuggling aliens, the "bring and present" requirement of 8

_____

[*]Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

U.S.C. § 1324(a)(2)(B)(iii) violates the Fifth Amendment's privilege against self-incrimination. That requirement imposes a duty on individuals transporting international passengers to "bring and present" those passengers to appropriate immigration officers at a designated point of entry immediately upon arrival into the country. We hold that the statute does not violate the defendant's privilege against self-incrimination.[1]

## I. BACKGROUND & PROCEDURAL HISTORY

A federal grand jury indicted Oneche Garcia-Cordero on various charges arising out of his attempt to smuggle thirty-five undocumented aliens into the United States from Cuba. The indictment contains: one count of conspiracy to encourage and induce aliens to enter the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count I); thirty-five counts of encouraging and inducing aliens to enter the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) (Counts 2-36);

---

[1] After oral argument, we requested supplemental briefing on the issue of ripeness. After consideration, we conclude that the issue presented is sufficiently ripe for our review.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 1259 (1998) (quotation and citation omitted). Here, however, the injury to Garcia-Cordero is not speculative. He was charged by indictment and convicted of violating the statute which he challenges. So, Garcia-Cordero has already suffered injury, and his claim is ripe for review. The circumstances of this case are similar to those in *California v. Byers*, 402 U.S. 424, 91 S. Ct. 1535 (1971), where the Supreme Court did not address ripeness directly, but it reached the merits of a Fifth Amendment claim of a defendant who failed to comply with a reporting statute and was charged with violating that statute.

thirty-five counts of bringing aliens to a place other than a designated point of entry in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) (Counts 37-71); and one count of attempting to reenter as a removed alien in violation of 8 U.S.C. § 1326(a) (Count 72).

Garcia-Cordero moved to dismiss Counts 37-71 before trial, arguing that the statute's requirement that aliens be brought immediately before and presented to immigration officials upon arrival at the border violated his Fifth Amendment privilege against self-incrimination. The Government contended that Garcia-Cordero's motion was premature and without merit. The district court referred the motion to a magistrate judge. Garcia-Cordero conceded that the motion presented an "as applied" challenge to the statute, and as a result, should await a factual record to be developed at trial. Accordingly, the magistrate judge recommended that the motion be denied without prejudice to renew after trial, or alternatively, that the resolution of the motion be deferred until after trial.

After a bench trial, the district court convicted Garcia-Cordero on all counts. Garcia-Cordero then renewed his motion to dismiss Counts 37-71. The district court assumed, without deciding, that the act of bringing and presenting aliens to the appropriate border officials would "otherwise be sufficiently testimonial, incriminating, and compelled to qualify for the privilege." (R.1-71 at 4.)

3

Nevertheless, the district court denied his motion, holding that the bring and present requirement of the statute "is part of a regulatory regime constructed to effect public purposes unrelated to the enforcement of criminal laws and that, as a result, [ ] Garcia-Cordero cannot invoke the Fifth Amendment privilege to resist prosecution for non-compliance." (*Id.*) Garcia-Cordero appeals.

## II. CONTENTIONS OF THE PARTIES

Garcia-Cordero contends that requiring persons who have smuggled aliens into the country to bring and present those aliens to an immigration official at a designated port of entry violates the right against self-incrimination contained in the Fifth Amendment. The Government responds that the bring and present requirement of the statute is outside the ambit of the privilege because it is part of a broader scheme of immigration law. In other words, the requirement is part of a noncriminal regulatory scheme not directed at persons suspected of committing a crime. Therefore, according to the Government, the privilege is not implicated. Alternatively, the Government contends that even if the statute does not fall within the regulatory scheme exception to the privilege, the district court's order should be upheld because the physical presentation of aliens is not testimonial, and the disclosure is not incriminatory.

4

## III.  STANDARD OF REVIEW

We review *de novo* whether a statute is unconstitutional as applied.  *United States v. Evans*, 476 F.3d 1176, 1178 (11th Cir. 2007) (citation omitted).

## IV.  DISCUSSION

8 U.S.C. § 1324, entitled "Bringing in and harboring certain aliens," makes it a crime for,

> [a]ny person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien.

*Id.* § 1324(a)(2).  If "the alien is not upon arrival immediately *brought* and *presented* to an appropriate immigration officer at a designated port of entry," the statute provides for an increased penalty.  *Id.* § 1324(a)(2)(B)(iii) (emphasis added).

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  The privilege only applies "when the accused is compelled to make a *testimonial* communication that is incriminating." *Baltimore City Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549, 554, 110 S. Ct. 900, 904 (1990) (internal quotations and citations omitted).  "When the government demands that an item be produced, the only thing compelled is the act of producing the item.  The Fifth Amendment's protection may nonetheless be

5

implicated because the act of complying with the government's demand testifies to the existence, possession, or authenticity of the things produced." *Id.* at 554-55, 110 S. Ct. at 905 (internal quotations and citations omitted). However, Congress may in some instances, without violating the privilege, require individuals to report information to the government which may incriminate the individual. The Supreme Court "has on several occasions recognized that the [ ] privilege may not be invoked to resist compliance with a regulatory regime constructed to effect the State's public purposes unrelated to the enforcement of its criminal laws." *Id.* at 556, 110 S. Ct. at 905. Therefore, the question here is whether the bring and present requirement falls within the regulatory regime exception.

The Supreme Court has held that statutes may violate the privilege if "directed at a highly selective group inherently suspect of criminal activities," *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 79, 86 S. Ct. 194, 199 (1965), and it has identified several areas permeated with criminal statutes in which a defendant is inherently suspected of criminal activities. For example, in *Marchetti v. United States*, 390 U.S. 39, 88 S. Ct. 697 (1968), the Court considered whether laws requiring registration to engage in wagering activities violated the privilege. Federal and state law widely prohibited gambling at the time the case was decided. *Marchetti*, 390 U.S. at 44, 88 S. Ct. at 700. Because "every portion of these

6

requirements had the direct and unmistakable consequence of incriminating petitioner," *Id.* at 49, 88 S. Ct. at 703, the Court held that compelling the defendant to comply with the registration requirements violated the privilege. *See also Albertson*, 382 U.S. 70, 86 S. Ct. 194 (1965) (holding that a law requiring registration of membership in the Communist Party violated the privilege); *Haynes v. United States*, 390 U.S. 85, 96, 98-99, 88 S. Ct. 722, 730-31 (1968) (holding that a law requiring firearm registration violated the privilege because the law was aimed "principally at those persons who have obtained possession of a firearm without complying with the [law's] other requirements, and who therefore are immediately threatened by criminal prosecutions" and because the requirement involved an issue "permeated with criminal statutes," not "an essentially noncriminal and regulatory area of inquiry"); *Leary v. United States*, 395 U.S. 6, 89 S. Ct. 1532 (1969) (invalidating a law requiring registration of marijuana dealers). Garcia-Cordero argues that his case is analogous to this line of cases. The determinative issue, he contends, is whether his compliance with § 1324(a)(2)(B)(iii) would have made him vulnerable to prosecution. He says that it would, arguing that compliance with the statute would furnish a link in the chain of evidence that would be used to prosecute him for alien smuggling.

The Supreme Court has held, however, that the privilege may not be asserted to avoid complying with a regulatory regime. In *California v. Byers*, 402 U.S. 424, 91 S. Ct. 1535 (1971), the Court held that a statute requiring a driver involved in an accident to exchange names and addresses with the driver of the other vehicle did not violate the privilege even when complying with the statute could expose the driver to criminal charges. In contrast to the cases Garcia-Cordero cites, where "the disclosures condemned were only those extracted from a highly selective group inherently suspect of criminal activities and the privilege was applied only in an area permeated with criminal statutes," *id.* at 430, 91 S. Ct. at 1539 (quotations and citations omitted), the statute at issue in *Byers* "was not intended to facilitate criminal convictions but to promote the satisfaction of civil liabilities." *Id.* Importantly, the law in that case was directed at *all* drivers. *See also United States v. Sullivan*, 274 U.S. 259, 47 S. Ct. 607 (1927) (holding that requirement compelling individuals to file income tax return does not violate the privilege, even when doing so may expose criminal activity); *Bouknight*, 493 U.S. at 561, 110 S. Ct. at 908 (holding that the privilege does not protect a mother against a court order requiring her to deliver her child to social services). These cases stand for the proposition that the "privilege may not be invoked to resist compliance with a regulatory regime constructed to effect the

8

State's public purposes unrelated to the enforcement of its criminal laws." *Id.* at 556, 110 S. Ct. at 905.

"Tension between the State's demand for disclosures and the protection of the right against self-incrimination is likely to give rise to serious questions. Inevitably these must be resolved in terms of balancing the public need on the one hand, and the individual claim to constitutional protections on the other." *Byers*, 402 U.S. at 427, 91 S. Ct. at 1537. Here, we must balance these competing interests in the context of the bring and present requirement.

In general, immigration law is more properly classified as regulatory rather than criminal. *Rajah v. Mukasey*, 544 F. 3d 427, 442 (2d Cir. 2008). While there are certainly "some crimes related to immigration violations . . . the level of criminal regulation in immigration matters is far less, and almost of a different order from that which governs those areas where reporting requirements have been struck down." *Id.* The Government correctly asserts that identifying and questioning individuals who enter our country is essential to controlling our borders, which is a critical national security issue. *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001) (noting that the federal government has the responsibility to police national borders); *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996); *United States v. Lueck*, 678 F.2d 895, 899 (11th Cir. 1982).

The "bring and present" requirement of § 1324(a)(2)(B)(iii) is part of the federal regulatory scheme through which the government controls our national borders. It "applies to all persons transporting aliens to the United Sates—irrespective of whether those aliens have received prior authorization, and irrespective of the transporters' knowledge regarding such authorization." (R.1-71 at 9-10.) The statute demands that every person bringing an alien to, or providing a means for an alien to come to, the United States prevent the alien from entering the country at any port of entry not designated by the Attorney General or immigration officers. 8 U.S.C. § 1321(a). We agree with the district court that it "does not target a highly selective group inherently suspect of criminal activities." (R.1-71 at 10 (quotation and citation omitted).) The statute imposes the bring and present requirement on all who transport aliens to this country—not just those who do so illegally. On its face, it does not seek the admission of incriminating information.

The concern expressed in *Albertson*, *Marchetti*, *Haynes*, and *Leary*, that the disclosure requirements were imposed on highly selective groups, does not apply here. Instead, as the district court noted, this case is similar to *Sullivan, Byers,* and *Bouknight*, in the respect that in all of these cases, the disclosure requirements were part of broader civil regulatory schemes and applied to broad groups, and the activity required to be disclosed was not inherently illegal. "[T]he fact that incriminating

evidence may be the byproduct of obedience to a regulatory requirement . . . does not clothe such required conduct within the testimonial privilege." *U.S. v. Hubbell*, 530 U.S. 27, 35, 120 S. Ct. 2037, 2043 (2000) (footnotes omitted). We hold that the reporting requirement in this case falls in the same category.

## V. Conclusion

Accordingly, the district court did not err in finding that "the privilege against self-incrimination does not protect [Garcia-Cordero] from prosecution for failing to comply with the bring and present requirement, even though his compliance might have been incriminating." (R.1-71 at 12.)[2]

AFFIRMED.

---

[2]Because we find that the privilege is inapplicable because of the regulatory scheme exception, it is unnecessary for us to address the Government's arguments that the physical presentation of aliens is not testimonial and the disclosure is not incriminatory.

KORMAN, District Judge, concurring:

I concur in the affirmance of the judgment of conviction without reaching the merits of Garcia-Cordero's self-incrimination claim. I do so for the following reasons. Title 8 U.S.C. § 1324(a)(2) makes it a misdemeanor to bring in or attempt to bring in any unauthorized alien "knowing or in reckless disregard of the fact that [the] alien has not received prior official authorization to come to, enter, or reside in the United States." § 1324(a)(2). The statute, which was enacted in 1986, has its genesis in the early 1980s when the government obtained 84 indictments charging more than 300 defendants with "bring[ing] into" the United States any alien "not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States." 8 U.S.C. § 1324(a)(1) (1976), *amended by* 8 U.S.C. §§ 1324(a)(1) & 1324(a)(2) (1986).

The defendants in those cases were part of what was then described as the "Freedom Flotilla." They carried more than 125,000 undocumented Cuban nationals to the United States and presented them to INS officials at West Key, Florida, so that the aliens could apply for political asylum. *See United States v. Nguyen*, 73 F.3d 887, 891 (9th Cir. 1995). In *United States v. Zayas-Morales*, 685 F.2d 1272 (11th Cir. 1982), we held that the boat owners and crew members could not be prosecuted for willfully and knowingly transporting these undocumented Cuban nationals, because

12

they lacked general criminal intent, *i.e.* the intent to commit an illegal act, *id.* at 1277–78. As the House Judiciary Committee Report explained, "[o]f crucial significance was the fact that the defendants in the case made no effort to land any undocumented Cubans surreptitiously or evasively, but instead brought them directly to immigration officers in Key West." H.R. Rep. No. 99-682(I), at 66 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5670.

The House Judiciary Committee Report reflects the concern that, "[w]ithout the threat of criminal prosecution, there is no effective way to deter potential transporters from inundating U.S. ports of entry with undocumented aliens." *Id.* As the Report explained, "[a]s happened during the Mariel episode, the United States would be forced to expend extraordinary amounts of money and human resources in processing, monitoring, caring for and giving hearings to exorbitant numbers of people." *Id.* Consequently, Congress enacted 8 U.S.C. § 1324(a)(2), which does not require general criminal intent, to make it a misdemeanor to engage in conduct of the kind at issue in the Mariel "Freedom Flotilla" cases. Thus, the statute was intended to reach defendants who, like those in the Mariel cases, had no intention of smuggling aliens into the United States, but who nevertheless forced the expenditure of extraordinary resources by knowingly bringing unauthorized aliens into the country and to a designated port of entry for processing.

On the other hand, 8 U.S.C. § 1324(a)(2) provided for an enhanced five-year mandatory minimum sentence for those defendants who were engaged in smuggling defendants into the United States by not presenting unauthorized aliens to an immigration officer at a designated port of entry. *See* § 1324(a)(2)(B)(iii). Read in context, the purpose of the enhanced sentence was not to enforce compliance with the presentment requirement or punish those who failed to do so. Instead, it was intended to deter the smuggling of aliens into the United States and to punish those who engaged in that activity.

Garcia-Cordero falls within this category of defendants who had no intention of presenting the aliens they were smuggling into the country to an immigration officer at a designated port of entry. Nevertheless, he argues that because compliance with the "bring and present" requirement would have incriminated him, his sentence cannot be enhanced for his failure to do so. In essence, his argument is that he is being punished for asserting the privilege against self-incrimination and that this renders the enhancement unconstitutional as applied to him.

This argument is wholly without merit because Garcia-Cordero's failure to comply with the "bring and present" requirement was not based on his fear of self-incrimination, as opposed to his desire to consummate a crime he was in the mist of committing. Briefly, the record shows that on August 12, 2008, Garcia-Cordero left

14

Ft. Myers, Florida aboard a 33-foot motor vessel, headed for Western Cuba. There, on the morning of August 13, 2008, 35 Cuban nationals boarded the boat which departed for Loggerhead Key, Florida, where Garcia-Cordero intended to smuggle the aliens into the United States. As the boat approached shore, it attracted the attention of the United States Coast Guard patrol. The patrol responded to the scene and observed the passengers jumping from the vessel and taking cover as they reached shore. Ultimately, the passengers were rounded up and Garcia-Cordero was arrested.

On this record, it is obvious that Garcia-Cordero was carrying out a scheme to smuggle aliens into the United States. He never had any intention to comply with the "bring and present" requirement because such compliance would have wholly defeated the purpose of the criminal activity in which he was engaged. Indeed, as previously observed, in *United States v. Zayas-Morales* we held that compliance with such a requirement was inconsistent with the *mens rea* required to convict a defendant of bringing unauthorized aliens into the United States under the former version of 8 U.S.C. § 1324(a)(1). *See Zayas-Morales*, 685 F.2d at 1277–78.

Unlike other cases, in which it is clear that fear of self-incrimination constituted a basis for a defendant's failure to comply with a disclosure requirement, *see, e.g.*, *Marchetti v. United States*, 390 U.S. 39, 52 (1968), or where the defendant

actually testified that his failure was motivated by "an apprehension that . . . he might incriminate himself," *Leary v. United States*, 395 U.S. 24, 29 (1969), common sense suggests that this was not the case here. Indeed, Garcia-Cordero concedes that he did not argue below, nor does he argue here, that it was his fear of self-incrimination that accounted for his failure to comply with the "bring and present" requirement. *Cf. United States v. Liguori*, 430 F.2d 842, 844 n.2 (2d Cir. 1970) ("[I]f the accused's failure to pay the transfer tax was not at all motivated by his fear of possible incrimination, then [the privilege] may be no bar to his prosecution."). Under these circumstances, Garcia-Cordero's challenge to the statute as unconstitutional as applied to him is nothing more than a disguised facial challenge which violates "the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973).

The case would be otherwise if Garcia-Cordero had actually complied with the "bring and present" requirement and he was being prosecuted based on evidence allegedly obtained as a result of such compliance. *See Baltimore City Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549, 554–56 (1990) (suggesting that "limitations may exist upon the State's ability to use the testimonial aspects" of an act of compelled

16

production). If that were the case, he might have standing to argue that the statute was unconstitutional as applied to him. Because such a far-fetched scenario is not present here, there is no need to address the merits of such a claim.