**In re GRAND JURY SUBPOENA TO CUSTODIAN OF RECORDS, MID-CITY REALTY COMPANY.**

No. 73-1854.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 14, 1973.

Decided May 23, 1974.

N. C. Deday LaRene, Detroit, Mich., for appellant; Liberson, Fink, Feiler, Crystal & Burdick, Detroit, Mich., on brief.

Alan C. Harnisch, Asst. U. S. Atty., for respondent; Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., on brief.

Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge. .

O'SULLIVAN, Senior Circuit Judge.

This case presents the question of whether a real estate broker can invoke the privilege against self incrimination in order to prevent disclosure of escrow deposit records which are required to be kept by state law. A grand jury subpoena *duces tecum* had been served upon Leonard Ciaffone, President of Mid-City Realty Company, a sole proprietorship owned by Peter Ficorelli, requiring Ciaffone to produce the escrow records of said company reflecting down payments made to such company by prospective buyers of homes, with mortgages thereon to be insured by the FHA. The records, so subpoenaed, are required to be kept under Michigan Law, Mich.Stat.Ann. § 19.803 (Supp. 1973) (Mich.Comp.Laws § 451.213) which provides in pertinent part:

"The commission may upon its own motion, and shall upon the verified complaint in writing of any person, investigate the actions of an applicant for a real estate broker or real estate salesman license or any real estate broker or real estate salesman or any person who shall assume to act in either such capacity within this state and shall have the power to deny, suspend or revoke any license issued under the provisions of this act at any time where the applicant or licensee in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of:

\* \* \* \* \* \*

(j) Failing to deposit in a custodial trust or escrow account all moneys belonging to others coming into the hands of the licensee in compliance with the following requirements:

\* \* \* \* \* \*

(5) Every real estate broker shall keep records of all funds deposited therein, which records shall indicate clearly the date and from whom he received money, the dates deposited, the dates of withdrawals, and other pertinent information concerning the transaction, and shall show clearly for whose account the money is deposited and to whom the money belongs. All such records shall be subject to inspection by the commissioner or his deputies and by employees of the commission. Such separate custodial or trust fund account shall designate the real estate broker as trustee, and such account must provide for withdrawal of funds without previous notice.

\* \* \* \* \* \*

This act shall not be construed to relieve any person from civil liability or criminal prosecution under the general laws of this state."

The said Ciaffone did not produce such records and thereafter an attorney for Mid-City Realty Company, N. C. Deday LaRene, advised the District Court that he would take, and keep, custody of such records until the Court determined the propriety of the requirement that such records be so produced. A grand jury subpoena for the production of such records was thereupon served upon the said attorney, and upon Ficorelli as owner of Mid-City Realty Company.

The said attorney claimed justification for such refusal by averring:

"They are not corporate records and therefore not subject to subpoena, and that the compelling of their production would violate my client's Fifth Amendment privilege against self-incrimination."

On July 16, 1973, Judge Freeman entered an order requiring Ficorelli to direct his attorney to deliver the said escrow records to the grand jury. Ficorelli advised the District Judge that he would refuse to obey such order. Thereupon, Ficorelli was held to be in contempt of the District Court and a fine of $100 for each day that Ficorelli would persist in such refusal was imposed. On the same day enforcement of the contempt order was stayed pending disposition of the appeal now before us.

Appellant's position is succinctly presented by the Statement of Issue set out in his address to us:

"Can a Federal Grand Jury compel the production of non-corporate escrow deposit records, required by a state statute to be kept, notwithstanding the appellant's Fifth Amendment claim of privilege?"

We believe that the Supreme Court's decision in Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), compels us to affirm the District Court. At issue is whether the "required records exception" to the Fifth Amendment privilege against self incrimination as announced in *Shapiro* is applicable to appellant's escrow deposit records. That exception, as stated in *Shapiro*, is that:

"The privilege which exists as to private papers cannot be maintained in relation to 'records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established.'" 335 U.S. at 33.

In Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), the Supreme Court found deprivation of Fifth Amendment rights where a gambler was convicted of failure to pay the occupational tax imposed on the business of placing wagers. It was held that to require payment of the tax was tantamount to an admission of guilt of violation of the anti-gambling laws. The Court distinguished *Shapiro* as follows:

"[F]irst, the purposes of the United States' inquiry must be essentially regulatory; second, information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept; and third, the records themselves must have assumed 'public aspects' which render them at least analogous to public documents." 390 U.S. at 67–68.

To the same effect is Marchetti v. United States, 390 U.S. 39, 56–57, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

In the matter before us, the first and second elements of the *Grosso* test are met. Although the last sentence of Section 19.803 of the Michigan Statute states that the law is not to be construed "to relieve any person from civil liability or criminal prosecution," the statute when read as a whole is regulatory, non-criminal, in nature. Its focus is on investigating applicants, salesmen and real estate brokers on a variety of practices, and it provides a scheme whereby various records are required to be kept. Such records can become harmful—criminal in nature—only when the provisions of the statute are not complied with. There is also no doubt that the escrow deposit records are such as would be "customarily kept" by a real estate organization.

Appellant contends, however, that the third requirement—that the records must have assumed "public aspects"—is missing. He contends that the exclusive purpose of requiring the records is for the denial, suspension or revocation of real estate licenses. There is no specific statutory authorization for using the records for other purposes. We are unable, however, to accept such a restrictive view of the involved statute. While the section does not specifically state

that other interested groups may have access to the records, it does not exclude others from obtaining such material. Furthermore, the fact that criminal prosecution is possible for those keeping the records supports the view that use of the records by the Commission is not exclusive. It is of no significance that the record keeping requirement is established by state law rather than federal law.

In United States v. Silverman, 449 F. 2d 1341 (2d Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972), the Second Circuit held that closing statements in contingent fee cases were subject to the required records exception. By a New York Court Rule, such closing statements were required to be filed, and the information therein could be divulged only upon written order of the Presiding Justice of the Appellate Division of the state court. In order to ascertain defendant's gross income, the Internal Revenue Service sought and was given the taxpayer's statements. The Court there said:

> "Records required to be kept pursuant to a reasonable regulatory scheme have 'public aspects' and may be examined for evidence of criminal conduct.
>
> \*   \*   \*   \*   \*   \*
>
> The documents involved here have no relevance to the revelation of criminal conduct. At the time they were filed they did not incriminate; they became harmful only after the filing of tax returns that failed to report certain income." 449 F.2d at 1345–1346.

We believe that there is sufficient public concern for the requirement of keeping records in the present case. As in *Silverman*, these records did not have to be open to the general public in order to meet the "public aspects" requirement.

In Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), the Supreme Court held that the Fifth Amendment did not prevent the Internal Revenue Service from obtaining business and tax records which the taxpayer had turned over to her accountant. It stated:

> "It is important to reiterate that the Fifth Amendment privilege is a *personal* privilege; it adheres basically to the person, not to information that may incriminate him . . . . It is extortion of information from the accused himself that offends our sense of justice." 409 U.S. at 328 (Emphasis in original.)

The Court concluded:

> "Petitioner seeks extensions of constitutional protections against self-incrimination in the very situation where obligations of disclosure exist and under a system largely dependent upon honest self-reporting even to survive. Accordingly, petitioner here cannot reasonably claim, either for Fourth or Fifth Amendment purposes, an expectation of protected privacy or confidentiality.
>
> V.
>
> "The criterion for Fifth Amendment immunity remains not the ownership of property but the ' "physical or moral compulsion" exerted.' *Perlman* [v. United States,] 247 U.S. [7] at 15 [38 S.Ct. 417, 62 L.Ed. 950.] We hold today that no Fourth or Fifth Amendment claim can prevail where, as in this case, there exists no legitimate expectation of privacy and no semblance of governmental compulsion against the person of the accused." 409 U.S. at 335–336.

The required records exception as applied in this case is consistent with the Court's interpretation of the Fifth Amendment in *Couch*. Under the duty to disclose information pursuant to Section 19.803, there was no legitimate expectation of privacy, and therefore no privilege attached. We consider that our decision in United States v. Blank, 459 F.2d 383 (6th Cir.), cert. denied, 409 U.S. 887, 93 S.Ct. 111, 34 L.Ed.2d 143 (1972), is consistent with the conclusion we reach.

The decision of the District Court is affirmed.