In re **GRAND JURY SUBPOENA DUCES TECUM SERVED UPON Randall UNDERHILL, d/b/a East Side Motors (85–5127, W.D.).**

In re **GRAND JURY PROCEEDINGS, Ward MASSEY (85–5134, E.D.), Petitioners-Appellees,**

v.

**UNITED STATES of America, Respondent-Appellant.**

Nos. 85–5127, 85–5134.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 31, 1985.

Decided Jan. 13, 1986.

Rehearing and Rehearing En Banc Denied Feb. 27, 1986.

Louis DeFalaise, U.S. Atty., Robert Michael Murphy, Lexington, Ky., Ronald E. Meredith, U.S. Atty., Louisville, Ky., David P. Grise, Office of Consumer Litigation, Civil Div., U.S. Dept. of Justice, Leonard Schaitman (Lead), Douglas Letter (argued), U.S. Dept. of Justice, Washington, D.C., for the U.S.

Larry G. Bryson (argued), London, Ky., for Massey.

Randall Underhill, pro se.

Gary R. Haverstock (argued), for Underhill.

Before KRUPANSKY and MILBURN, Circuit Judges and HIGGINS, District Judge.*

MILBURN, Circuit Judge.

In this consolidated appeal, we are asked to decide whether sole proprietors operating automobile dealerships, who are required by law to maintain and make available to federal officials and to their transferees odometer statements for motor vehicles they buy and sell, are protected by the Fifth Amendment bar against self-incrimination from producing the odometer statements in response to federal grand jury subpoenas. Because in our view the contents, as well as the act of producing the odometer statements, come within the required records exception to the Fifth Amendment, *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), we hold the statements must be produced.

I.

In the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1981 *et seq.* ("the Act"), Congress banned tampering with or disconnecting odometers and required the Secretary of Transportation to prescribe rules mandating that any person who transfers a motor vehicle give written disclosure to the transferee of the mileage

---

* The Honorable Thomas A. Higgins, Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

registered on the odometer and a notice if the odometer reading is known to be inaccurate. 15 U.S.C. §§ 1984 and 1988. In order to insure compliance with the Act and to permit its enforcement, Congress also authorized the Secretary to require automobile dealers to maintain records reasonably needed by the Secretary and to permit inspection of those records by designated federal officials. 15 U.S.C. § 1990d(a), (b), and (c)(2). Pursuant to this statutory authority, the Secretary has mandated that automobile dealers retain for four years copies of all odometer statements they issue or receive. 49 C.F.R. § 580.7. These statements must be kept at the dealer's primary place of business in a systematically retrievable order. *Id.*

In late 1984, the Department of Justice conducted investigations into possible violations of the Act by automobile dealers in Kentucky. During these investigations, the grand jury sitting in the Western District of Kentucky issued a subpoena duces tecum to petitioner Randall Underhill, a sole proprietor doing business as East Side Motors in Murray, Kentucky.

Underhill was called to testify before the grand jury and to bring with him all odometer statements for motor vehicles he bought and sold between June 1, 1981, and June 1, 1982, as well as other required state and federal records. Underhill moved for the district court to quash the subpoena insofar as it required production of the odometer statements, contending that the subpoena required him to make incriminating testimonial communications in violation of his Fifth Amendment protection against self-incrimination.

In October 1984, as part of the same Justice Department investigations, another sole proprietor automobile dealer, petitioner Ward Massey, d/b/a A.T.V. Leasing in London, Kentucky, was commanded to appear before the grand jury sitting in the Eastern District of Kentucky. Massey was asked to bring with him, among other things, handwriting exemplars and odometer statements for motor vehicles bought and sold between April 1, 1984, and September 15, 1984.

When summoned to appear, Massey declined to furnish any of the requested records except the handwriting samples and asked that the subpoena duces tecum be quashed by the supervising district court. He argued that both the contents and the production of the odometer statements were protected by the Fifth Amendment privilege against self-incrimination.

Both district courts quashed the subpoenas duces tecum at issue. The court in the Western District of Kentucky first held that the contents of the odometer statements sought from Underhill were *not* protected by the Fifth Amendment. The court concluded that the statements themselves fell within the required records exception to the Fifth Amendment. However, the court did hold that the *act of producing* these nonprotected records was protected by the Fifth Amendment and could not be compelled unless use immunity was given by the government. The court first concluded that requiring production would call for testimonial self-incrimination by Underhill. The court then based its ultimate holding on *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), wherein the Supreme Court held that the contents of voluntarily kept sole proprietorship records were not protected by the Fifth Amendment, but that their production was protected because that production would require testimonial self-incrimination by the record holder.

The court in the Eastern District of Kentucky quashed the subpoena duces tecum directed to Massey on similar grounds. The court explained that "the real question at issue here does not involve the contents of the documents, but whether the act of producing the documents themselves involves testimonial self-incrimination." The court noted that failure to maintain the odometer statements is a misdemeanor and that the government had declined to grant Massey use immunity for production of the documents, or complete immunity if he failed to keep the mandated records.

## II.

### A.

■ The first issue we must decide is whether the contents of the requested documents fall within the required records exception to the Fifth Amendment. In making this determination we are mindful that the privilege against self-incrimination must be construed so as to preserve its constitutional imperative "as a bulwark against iniquitous methods of prosecution." *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). In order to meet this narrow exception, three requirements must be met. First, the purposes of the government's inquiry must be essentially regulatory, rather than criminal. Second, the records must contain the type of information that the regulated party would ordinarily keep. Third, the records "must have assumed 'public aspects' which render them at least analogous to public documents." *Grosso v. United States*, 390 U.S. 62, 67–68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968) (interpreting *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948)).

■ Turning to the first *Grosso* factor, petitioners argue that the inquiry at issue is clearly criminal. Petitioners note that the proceedings from which these consolidated appeals arose were grand jury investigations into criminal activity, and in Massey's case the government stated that if Massey could not produce the documents, he likely would be prosecuted. However, in determining whether the *contents* of the documents, which were prepared prior to the grand jury subpoenas, fall within the required records exception, we believe the relevant inquiry is whether the statute and regulations which require their maintenance are regulatory in nature. Although it appears beyond question that the grand jury inquiry is criminal in nature, such is irrelevant to the present issue.

■ Petitioners next observe that whereas the Act places on every motor vehicle transferor the obligation of providing an odometer disclosure statement to his trans-feree, only dealers and distributors are required to retain the odometer disclosure statements for four years. Petitioners argue this demonstrates that the record keeping requirements are obviously motivated by the government's desire to obtain convictions for violations of the Act by providing enforcement officials with documentation to support convictions. Petitioners also argue that the legislative history of the Act demonstrates that the policy behind the Act is one of punishment, and the statute has no other purpose than to facilitate the discovery of criminal activity. Petitioners further argue that if the record keeping provisions were strictly regulatory there would be an immunity provision incorporated into the Act, and, furthermore, the Secretary would not have the authority to release information to the Attorney General for criminal investigations. *See* 15 U.S.C. § 1990d(a)(1).

We disagree. Although the specific provisions of the Act and the regulations requiring maintenance of odometer statements may have criminal application, these provisions serve the overall purpose of enforcement of an essentially regulatory program. *See In re Grand Jury Subpoena To Custodian of Records*, 497 F.2d 218, 220 (6th Cir.) (statute should be read "as a whole" to determine whether regulatory in nature), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). Morever, enforcement may be accomplished through either civil or criminal proceedings. For example, in addition to criminal prosecutions, the Act provides that individuals may bring civil actions for damages, 15 U.S.C. § 1989; the Attorney General and the states may seek injunctive relief, 15 U.S.C. §§ 1990 and 1990a; and the Secretary may impose a civil penalty, 15 U.S.C. § 1990b. Thus, the Act's record keeping requirements do not serve *only* criminal prosecution purposes.

The record keeping requirements of the Act are similar to the requirements upheld by the Supreme Court in *Shapiro, supra*. Although the sales records subpoenaed by the Office of Price Administration in *Sha-*

*piro* were used to compile evidence for a successful criminal prosecution, the Court nonetheless held that the required records were not protected by the Fifth Amendment. Similarly, in *United States v. Alkahafaji*, 754 F.2d 641 (6th Cir.1985), we upheld a criminal conviction for violation of a statute that required written notice to an airline when firearms were delivered to the carrier for transportation. In holding that the statute did not violate the Fifth Amendment's protection against self-incrimination, we noted that many of the people required to give the written notice would not be acting unlawfully and that the statute was not, therefore, directed at a "highly selective and inherently suspect" group of people. 754 F.2d at 647.

This reasoning is applicable here as there is no reason to believe that the persons subject to the requirements of the Motor Vehicle Information and Cost Savings Act are any more "inherently suspect" than are persons shipping firearms. *See also California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971) (plurality) (state statute requiring drivers involved in motor vehicle accident to stop at scene and give name and address not directed at "selective" or "suspect" group).

Accordingly, we reject petitioner's argument that because the specific provision at issue is susceptible to use in criminal prosecutions and in fact is being so used in the instant cases, a finding of a regulatory purpose is foreclosed. To the contrary, we hold that the purpose of the Act, including its record keeping requirements, is essentially regulatory. The instant consolidated cases are distinguishable from *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) and *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), relied on by petitioners. In *Grosso* the Court struck down a statute requiring a gambler to pay special federal taxes, and in *Albertson* the Court invalidated a statute requiring a member of the Communist Party to register with the government. Those cases involved situations wherein the information required to be disclosed inescapably implicated the individual in criminal activity. By contrast, there is nothing ordinarily criminally suspect about selling a motor vehicle, and in the vast number of cases we are confident that by complying with the Act, automobile dealers admit nothing criminal. This could not be said of the circumstances in *Grosso* and *Albertson*.

As to petitioners' argument that because only automobile dealers must keep odometer statements available for federal inspection and because the Secretary is empowered to refer known violations of the Act to the Attorney General for "investigatory consideration," the Act must have a purely criminal law purpose, we view these facts to be of limited significance. Enforcement efforts obviously must be directed primarily at dealers. Furthermore, unless persons are to be free to violate the Act with impunity, the Secretary must be able to refer matters to the Attorney General for appropriate criminal *or civil* sanctions. However, these facts do not undermine the basic regulatory purpose of the statute; viz., to provide consumers with accurate automobile mileage information. *See* 15 U.S.C. § 1981.

As to the second *Grosso* factor, we have no difficulty in concluding that the Act requires the maintenance of records which automobile dealers would ordinarily keep. Odometer mileage is but one aspect of the overall records that automobile dealers can be expected to maintain on motor vehicles they buy and sell, for their own protection, and in order to place a value on the vehicles.

The third *Grosso* factor is also easily met. Odometer statements maintained by automobile dealers assume "public aspects" in that every transferor is required to provide a signed copy to the buyer, 15 U.S.C. § 1988(a); 49 C.F.R. § 580.4(a), and every transferee is required to sign the statement to acknowledge receipt, 49 C.F.R. § 580.4(e). Moreover, automobile dealers must permit inspection of the records by designated federal officials. 15 U.S.C. § 1990f. Under these circumstanc-

es the odometer statements are "at least analogous to public documents." *Grosso*, 390 U.S. at 68, 88 S.Ct. at 713.

We emphasize that compliance with the record keeping requirements of the Act is not incriminating on its face. *Compare Grosso*, 390 U.S. at 66–67, 88 S.Ct. at 713, and *Albertson*, 382 U.S. at 77, 86 S.Ct. at 198, with *Byers*, 402 U.S. at 430–31, 91 S.Ct. at 1539. This is not a situation, as petitioners insist, where "Congress can completely avoid the Fifth Amendment self-incrimination privilege by simply passing a law that requires a person to keep documents of *illegal* activities and if such records of *illegal* activities are not kept that the same be designated as a crime." (Petitioners' Brief at 22) (emphasis supplied). Buying and selling automobiles is not, in and of itself, an illegal activity.

In our view, the balance between "the public need [for maintenance of odometer statements] on the one hand, and the individual claim to constitutional protections on the other" must be struck in favor of society's interest in the maintenance of these records. *Byers, supra*, 402 U.S. at 427, 91 S.Ct. at 1537. As we have observed, the government's interest in requiring automobile dealers to maintain for inspection odometer statements is a legitimate component of the government's salutary effort to insure the accuracy of odometer statements. Moreover, requiring maintenance of the odometer records by the automobile dealers themselves is an effective and important means of advancing the statutory scheme. Finally, as we have noted, the record keeping requirement is not directed at a "highly selective group inherently suspect of criminal activities," involved in "an area permeated with criminal statutes." *Byers, supra*, 402 U.S. at 430, 91 S.Ct. at 1539. *See also Alkhafaji, supra*, 754 F.2d at 647.

## B.

Having determined that the contents of the records sought by the grand jury fall within the required records doctrine, we must next determine whether the *act of producing* the odometer statements is nonetheless protected by the Fifth Amendment. Both district courts answered this inquiry in the positive and accordingly ordered the subpoenas quashed. We disagree.

In reaching their holdings, both district courts relied on *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), wherein the Supreme Court held that although the contents of voluntarily kept sole proprietorship records are not protected by the Fifth Amendment, the act of producing such records was protected where the production would require testimonial self-incrimination by the record holder. We believe the district courts erred in holding that *Doe* is controlling herein.

In *Doe* the Court carefully noted that only sole proprietorship business records other than required records were involved:

> The District Court mentioned tax returns and W–2 statements as examples of documents falling within [the category of records required by law to be kept or disclosed]. Respondent has not challenged this aspect of the District Court's opinion. *We therefore understand that this case concerns only business documents and records not required by law to be kept or disclosed to a public agency.*

104 S.Ct. at 1240 n. 3 (emphasis supplied).

To our knowledge, no court has ruled on the application of *Doe* to required records. However, prior to *Doe*, three circuits held that the act of production doctrine, first enunciated in *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976) is not applicable to required records. *See In re Grand Jury Proceedings (McCoy)*, 601 F.2d 162, 171 (5th Cir.1979); *In re Grand Jury Empanelled March 19, 1980*, 680 F.2d 327, 336 n. 15 (3d Cir.1982), *aff'd in part and rev'd in part on other grounds sub nom. United States v. Doe, supra*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *In re Doe*, 711 F.2d 1187, 1191–92 (2d Cir.1983);

and *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983,* 722 F.2d 981, 987 n. 5 (2d Cir.1983).

Two rationales are revealed by the above cases. First, because required records must have taken on a "public aspect" and because the law requires that they be kept, an individual admits little of significance by producing them. Second, if an individual chooses to begin or continue to do business in an area in which the government requires record keeping, he may be deemed to have waived any Fifth Amendment protection which would otherwise be present in the absence of the record keeping regulation. For example, the Fifth Circuit in *McCoy* stated:

> The proper designation by the government of certain records to be kept by an individual necessarily implies an obligation to produce them, and limited implied testimonial authentication. These obligations to keep and produce the records are in a sense consented to as a condition of being able to carry on the regulated activity involved.

601 F.2d at 171. The Second Circuit in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983* observed:

> The governmental requirement that [records] be kept implies an obligation to produce them upon the government's demand, which amounts to a waiver of any Fifth Amendment claim with respect to the act of production. Moreover, since they are required to be kept, production of them can hardly provide the basis for an inference of criminality in possessing them.

722 F.2d at 987 n. 5.

We agree with this reasoning. However, petitioners argue that *Doe,* a later case, undermines these authorities. Petitioners first suggest that the Supreme Court overruled the required records doctrine in *Doe.* Finding nothing in that opinion casting any doubt on the continuing validity of that doctrine, we decline petitioners' invitation to read *Doe* as *sub silentio* overruling *Shapiro* and its progeny.

Petitioners next appear to contend simply that because the act of producing the instant odometer statements will be incriminating, *Doe* must be applied to bar the grand jury's demand for production. The fatal flaw in petitioner's reasoning is that it overlooks the fundamental fact that the required records doctrine is an *exception* to the Fifth Amendment. *See, e.g., In re Grand Jury Subpoena to Custodian of Records, supra,* 407 F.2d at 220; *In re Doe, supra,* 711 F.2d at 1192. As such, the doctrine presupposes that compliance with the government's inquiry may be incriminating. Indeed, in *Shapiro,* petitioner was appealing from a criminal conviction. Nonetheless, the Supreme Court has directed that where the narrow parameters of the doctrine are met, and the balance weighs in favor of disclosure, the information must be forthcoming *even in the face of potential incrimination.* This is why *Doe* is not controlling, and why, we suspect, that the Court so carefully excluded required records from the reach of its holding. In our view, in order to have meaning the required records exception must apply to the act of production as well as the contents of documents to which the doctrine applies.

We find the following language from *Byers, supra,* equally applicable to the instant consolidated cases:

> In each of these situations [where society imposes a burden of compelled disclosure to satisfy a public need] there is some possibility of prosecution—often a very real one—for criminal offenses disclosed by or deriving from the information that the law compels a person to supply. Information revealed by these reports could well be "a link in the chain" of evidence leading to prosecution and conviction. But under our holdings the mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure called for by statutes like the one challenged here.

402 U.S. at 428, 91 S.Ct. at 1538.

### III.

Accordingly, we AFFIRM those parts of the decisions of the district courts below

which hold that the contents of the requested documents are not protected by the Fifth Amendment and REVERSE the determinations by those courts that the act of producing the odometer statements is protected and REMAND these cases with instructions that the district courts rescind their orders quashing the grand jury subpoenas duces tecum.