In re: GRAND JURY SUBPOENA DUCES TECUM TO JOHN DOE 1, John Doe 1, Petitioner,

and

In re: Grand Jury Subpoena Duces Tecum To John Doe 2, John Doe 2, Petitioner.

Misc. Nos. 05–MC–014, 05–MC–015.

United States District Court,
W.D. Tennessee,
Western Division.

May 11, 2005.

Stephen R. Leffler, Leffler Law Office, Memphis, for Nicholas Kerby, Petitioner, Pro se.

Dan Newsom, U.S. Attorney's Office, Memphis, for In Re: Grand Jury Proceeding.

Marty B. McAfee, McAfee & McAfee. Memphis, for Ryan Kerby.

## ORDER GRANTING MOTIONS TO QUASH SUBPOENAS DUCES TECUM TO TESTIFY BEFORE FEDERAL GRAND JURY

MCCALLA, District Judge.

Before the Court are the Motions to Quash Subpoenas Duces Tecum to Testify Before Federal Grand Jury of Petitioners John Doe 1 and John Doe 2, filed in open

court on March 15, 2005.[1] After an initial hearing on March 15, 2005, the Court requested that the parties submit briefs regarding the instant motions. The United States filed a consolidated response to both motions on March 23, 2005. Petitioner John Doe 2 filed a reply to the United States's response on March 24, 2005. The Court held a second hearing regarding these motions on March 24, 2005. In response to the Court's inquiry, the parties filed supplemental papers on March 29, 2005.[2] For the following reasons, Petitioners' motions to quash the subpoenas duces tecum are GRANTED.

## I. BACKGROUND

On or about March 1, 2005, Petitioners John Doe 1 and John Doe 2 were served with subpoenas duces tecum[3] to testify before a Federal Grand Jury and to bring with them: "[a]ny and all records pertaining to models used by [company/website names redacted] office located at [redacted]." (Mot. to Quash Subpoena Duces Tecum to Testify Before Federal Grand Jury, Ex. 1.)[4] Petitioners move to quash the subpoenas because they are purportedly in violation of their Fifth Amendment rights to be free from self-incrimination. The United States contends that an exception

to the general Fifth Amendment privilege applies in this case because the documents requested are records required to be kept pursuant to a valid regulatory scheme.

### A. 18 U.S.C. § 2257

The records sought by the United States are those required to be kept under 18 U.S.C. § 2257. Section 2257 requires that anyone who "produces any book, magazine, periodical, film, videotape, or other matter which ... contains one or more visual depictions made after November 1, 1990 of actual sexually explicit conduct ... shall create and maintain individually identifiable records pertaining to every performer portrayed in such a visual depiction." 18 U.S.C. § 2257(a). Specifically, § 2257 requires producers, "with respect to every performer portrayed in a visual depiction of actual sexually explicit conduct," to:

(1) ascertain, by examination of an identification document containing such information, the performer's name and date of birth, and require the performer to provide such other indicia of his or her identity as may be prescribed by regulations;

(2) ascertain any name, other than the performer's present and correct name,

---

1. A sealed version of this order was filed by the Court on April 13, 2005. On May 10, 2005, the Court filed an unsealed, redacted version of this order, pursuant to Federal Rules of Civil Procedure 6(e)(3)(E) and 6(e)(6), so that the redacted version can be publicly disclosed. Petitioners' names and other identifying information have been redacted for the purpose of the publication of this order.

2. The United States filed a supplemental letter on March 29, 2005, and Petitioner John Doe 2 filed a Response of Defendant, John Doe 2, to Court Query Whether Government Inquiry is Essentially Regulatory on March 29, 2005.

Although Petitioner John Doe 1 did not file supplemental briefs, the Court's analysis applies identically to each petitioner and so the

Court will consider Petitioner John Doe 2's arguments with respect to both Petitioners.

3. The subpoenas were dated March 1, 2005, and required Petitioners to appear before the Grand Jury on March 15, 2005.

4. The subpoena addressed to Petitioner John Doe 1 is attached to his original motion. (Mot. to Quash Subpoena Duces Tecum to Testify Before Federal Grand Jury, Ex. 1.) Although the subpoena served on John Doe 2 is not currently in the record before the Court, Petitioner John Doe 2 admits in his submissions that an identical subpoena was served upon him. (Reply to Resp. of the United States to Mot. to Quash Subpoena Duces Tecum to Testify Before Federal Grand Jury and Produce Records at 1.)

ever used by the performer including maiden name, alias, nickname, stage, or professional name; and

(3) record in the records required by subsection (a) the information required by paragraphs (1) and (2) of this subsection and such other identifying information as may be prescribed by regulation.

18 U.S.C. § 2257(b). The records required by § 2257 are to be maintained "at [the producer's] business premises, or at such other place as the Attorney General may by regulation prescribe." 18 U.S.C. § 2257(c). Producers must "cause to be affixed to every copy of any matter described in paragraph (1) of subsection (a) of this section ... a statement describing where the records required by this section with respect to all performers depicted in that copy of the matter may be located." 18 U.S.C. § 2257(e)(1). Further, producers "shall make such records available to the Attorney General for inspection at all reasonable times." 18 U.S.C. § 2257(c). Section 2257 also requires the Attorney General to issue regulations to implement the section. 18 U.S.C. § 2257(g).

■ Although § 2257 generally exempts information required to be kept under the statute from being used in some criminal prosecutions,[5] that exemption does not extend to "the use of such information or evidence in a prosecution or other action for a violation of this chapter or chapter 71, or for a violation of any applicable provision of law with respect to the furnishing of false information." 18 U.S.C. § 2257(d)(2). The reference to "this chapter" refers to Chapter 110 of the United States Code, entitled "Sexual Exploitation

and Other Abuse of Children." *See* 18 U.S.C. Pt. 1, Ch. 110. That chapter includes statutes that prohibit, *inter alia,* the employment of minors in sexually explicit media (hereinafter "child pornography"). *See* 18 U.S.C. § 2251 *et seq.* Accordingly, information required to be kept under § 2257 may be utilized in a criminal prosecution relating to child pornography.[6]

In addition to delineating the above requirements, § 2257 specifically provides that:

(f) It shall be unlawful—

(1) for any person to whom subsection (a) applies to fail to create or maintain the records as required by subsections (a) and (c) or by any regulation promulgated under this section;

(2) for any person to whom subsection (a) applies knowingly to make any false entry in or knowingly to fail to make an appropriate entry in, any record required by subsection (b) of this section or any regulation promulgated under this section;

(3) for any person to whom subsection (a) applies knowingly to fail to comply with the provisions of subsection (e) or any regulation promulgated pursuant to that subsection; and

(4) for any person knowingly to sell or otherwise transfer, or offer for sale or transfer, any book, magazine, periodical, film, video, or other matter, produce [sic] in whole or in part with materials which have been mailed or shipped in interstate or foreign commerce or which is intended for ship-

---

**5.** 18 U.S.C. § 2257(d)(1) provides that:

"No information or evidence obtained from records required to be created or maintained by this section shall, except as provided in this section, directly or indirectly, be used as evidence against any person with respect to any violation of law."

18 U.S.C. § 2257(d)(1).

**6.** Chapter 71 of the United States Code is entitled "Obscenity" and includes statutes that prohibit, *inter alia,* the production and distribution of obscene materials. *See* 18 U.S.C. Pt. 1, Ch. 71.

ment in interstate or foreign commerce, which—

> (A) contains one or more visual depictions made after the effective date of this subsection of actual sexually explicit conduct; and
>
> (B) is produced in whole or in part with materials which have been mailed or shipped in interstate or foreign commerce, or is shipped or transported or is intended for shipment or transportation in interstate or foreign commerce;
>
> which does not have affixed thereto, in a manner prescribed as set forth in subsection (e)(1), a statement describing where the records required by this section may be located, but such person shall have no duty to determine the accuracy of the contents of the statement or the records required to be kept.

18 U.S.C. § 2257(f). Specific criminal penalties for violation of the statute are included, as follows:

> i) Whoever violates this section shall be imprisoned for not more than 5 years, and fined in accordance with the provisions of this title, or both. Whoever violates this section after having been convicted of a violation punishable under this section shall be imprisoned for any period of years not more than 10 years but not less than 2 years, and fined in accordance with the provisions of this title, or both.

18 U.S.C. § 2257(i). Section 2257 does not provide for any other types of penalties. Moreover, § 2257 does not provide for any civil enforcement mechanisms.

## II. ANALYSIS

The Court will first discuss the relevant precedent regarding the required records exception, followed by a discussion of the purpose behind § 2257. Finally, the Court will analyze the applicability of the required records exception to this case in light of the relevant precedent.

### A. The Required Records Exception

Petitioners contend that requiring compliance with the subpoena would violate their Fifth Amendment privilege to be free from self-incrimination. The United States contends that the documents are required records and therefore Petitioners' Fifth Amendment privileges do not apply.

■■■ The general Fifth Amendment privilege against self-incrimination does not apply to records that are required to be kept pursuant to a valid regulatory scheme. *Shapiro v. United States,* 335 U.S. 1, 17–18, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948)[7]. However, "the privilege against self-incrimination must be construed so as to preserve its constitutional imperative 'as a bulwark against iniquitous methods of prosecution.'" *In re Grand Jury Subpoena Duces Tecum Served Upon Underhill,* 781 F.2d 64, 67 (6th Cir.1986)(quoting *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944)). Accordingly, the required records exception is a "narrow exception." *Underhill,* 781 F.2d at 67. In order for the government's request for information to meet this narrow exception, three requirements must be met: "[f]irst, the purposes of the government's inquiry must be essentially regulatory, rather than criminal. Second, the records must contain the type of information that the regulated party would ordinarily keep. Third, the records must have assumed public aspects which render them at least analogous to public documents." *Id.* (citing *Grosso v. United States,* 390

---

**7.** In *Shapiro,* the Supreme Court ruled that records subpoenad pursuant to the Emergency Price Control Act were required records and accordingly that no Fifth Amendment privilege applied to their production. *Shapiro,* 335 U.S. at 4–5, 17–18, 68 S.Ct. 1375.

U.S. 62, 67–68, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968))(internal quotation marks omitted).[8]

■ The fact that the Grand Jury investigates crimes does not mean that the purposes of the government's inquiry in this case are criminal. *Underhill,* 781 F.2d at 67. Rather, "the relevant inquiry is whether the statute and regulations which require their maintenance are regulatory in nature." *Id.*

The Supreme Court has found that the purpose of the government's inquiry is not regulatory, and therefore the required records exception does not apply, when the persons to whom the inquiry is directed are "a highly selective group inherently suspect of criminal activities" and when the inquiry concerns "an area permeated with criminal statutes, where response to [the inquiry] in context might involve the petitioners in the admission of a crucial element of a crime." *Albertson v. Subversive Activities Control Bd.,* 382 U.S. 70, 79, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965).[9] In addition, Congressional intent to make information available to prosecuting authorities weighs in favor of finding that the information is privileged and therefore outside the purview of the required records exception. *Grosso,* 390 U.S. at 68, 88 S.Ct. 709.

The Supreme Court has found that gamblers, *Marchetti v. United States,* 390 U.S. 39, 57, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso,* 390 U.S. at 68, 88 S.Ct. 709, and certain gun owners, *Haynes v. United States,* 390 U.S. at 85, 98, 88 S.Ct. 722[10], qualify as highly selective groups inherently suspect of criminal activities for the purpose of the required records exception.

On the other hand, the Supreme Court has noted that "the Fifth Amendment privilege may not be invoked to resist compliance with a regulatory regime constructed to effect the State's public purposes *unrelated* to the enforcement of its criminal laws." *Baltimore City Dept. of Social Services v. Bouknight,* 493 U.S. 549, 556, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990)(emphasis added). In *Bouknight,* the Supreme Court found that the Fifth Amendment privilege did not apply where a person was required to disclose the whereabouts of a child pursuant to a noncriminal regulatory regime governing children cared for via custodial orders. *Id.* at 559, 110 S.Ct. 900. Additionally, in *California v. Byers,* 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971), a plurality of the Supreme Court upheld enforcement of California's statutory requirement that drivers of cars in accidents stop and provide their names and addresses, finding that the statute was not intended

---

**8.** During the argument regarding this motion, the parties agreed that the second factor was met in this case, however, the parties dispute the application of the first and third factors. Because the Court below finds that the first requirement has not been met, the Court does not address the other factors.

**9.** In *Albertson,* the Supreme Court held that members of the Communist Party could assert a Fifth Amendment privilege not to comply with a government order to register on forms that required admission of membership in the Communist Party. *Albertson,* 382 U.S. at 79, 86 S.Ct. 194.

**10.** In *Haynes,* the relevant statute applied only to "shotguns with barrels less than 18

inches long; rifles with barrels less than 16 inches long; other weapons, made from a rifle or shotgun, with an overall length of less than 26 inches; machine guns and other automatic firearms; mufflers and silencers; and other firearms, except pistols and revolvers, if such weapon is capable of being concealed on the person." *Haynes,* 390 U.S. at 87, 88 S.Ct. 722 (citations and internal quotation marks omitted). According to the Court in *Haynes,* "[t]hese limitations were apparently intended to guarantee that only weapons used principally by persons engaged in unlawful activities would be subjected to taxation." *Id.* (citations omitted).

to facilitate criminal convictions, was directed at the public at large, and required disclosure of no inherently illegal activity. *Byers,* 402 U.S. at 430–31, 91 S.Ct. 1535.

Neither the parties nor the Court through its own research have found an opinion by any United States Court of Appeals or District Court analyzing the question of whether or not § 2257 and the regulations that implement it are essentially regulatory, rather than criminal. Accordingly, the Court analyzes this question as one of first impression. In light of the relevant precedent, the Court finds that § 2257 is not regulatory in nature, but rather is part of a comprehensive, criminal enforcement scheme which aims to eradicate the serious problem of child pornography, that it falls into an area permeated with criminal statutes, and that it is targeted at a highly selective group inherently suspect of criminal activities.

### B. The Purpose of § 2257 and Related Legislation

The United States Courts of Appeals for the Sixth Circuit and the District of Columbia Circuit have determined that § 2257 was enacted to alleviate the difficulty for law enforcement officers in ascertaining whether an individual in a film or other visual depiction is a minor in order to facilitate the prosecution of child pornography. *Connection Distributing Co. v.* *Reno,* 154 F.3d 281, 290 (6th Cir.1998); *American Library Ass'n v. Barr,* 956 F.2d 1178, 1182 (D.C.Cir.1992); *American Library Ass'n v. Reno,* 33 F.3d 78, 85–86 (D.C.Cir.1994).

In reaching the conclusion that § 2257 was enacted to combat child pornography, both the Sixth and D.C. Circuits looked to the 1986 final report of the Attorney General's Commission on Pornography, commonly known as the "Meese Commission," whose recommendations formed the basis of § 2257 and related legislation regarding child pornography. *See Connection Distributing Co.,* 154 F.3d at 290; *American Library Ass'n v. Barr,* 956 F.2d at 1182; *American Library Ass'n v. Reno,* 33 F.3d at 85. On the basis of the Meese Commission's report, the Sixth Circuit noted that "[t]he *stated purpose* of the original Child Protection and Obscenity Enforcement Act of 1988, *which § 2257 amended,* was to alleviate the difficulty for *law enforcement officers* in ascertaining whether an individual in a film or other visual depiction is a minor *for the purpose of combating child pornography.*" *Connection Distributing Co.,* 154 F.3d at 290 (internal citations to 1 Attorney General's Commission on Pornography, Final Report, 618–20 (1986) omitted).[11] Moreover, the D.C. Circuit noted that producers' use of youthful-looking performers to give viewers the impression that they were minors made it

---

11. Regarding the purpose of § 2257, the D.C. Circuit also found that:

> [T]he congressional purposes in enacting [§ 2257] are threefold: (a) to prevent the exploitation of children by requiring those responsible for photographing or videotaping sexually explicit acts (those defined in the regulations as "primary producers") to secure proof of the performer's age and to keep a record of the same as evidence of their compliance, (b) to deprive child pornographers of access to commercial markets by requiring secondary producers to inspect (and keep a record of) the primary producers' proof that the persons depicted

were adults at the time they were photographed or videotaped, and (c) to establish a system by which a law enforcement officer in possession of materials containing depictions of sexually explicit acts will be able to identify the performers and verify compliance.

*American Library Ass'n v. Reno,* 33 F.3d at 86.

The United States Court of Appeals for the Ninth Circuit has also found that § 2257 is part of a "comprehensive statutory scheme to eradicate sexual exploitation of children." *U.S. v. Thomas,* 893 F.2d 1066, 1068–69 (9th Cir.1990).

difficult to be certain whether those performers were under eighteen years old, which *"hindered prosecution* of child pornography offenses" and "provided an excuse to those in the distribution chain, who could profess ignorance that they were actually dealing in sexual materials involving children." *American Library Ass'n v. Barr,* 956 F.2d at 1182 (emphasis added).[12] The D.C. Circuit went on to note that "[i]n order to facilitate *enforcement of the federal criminal laws* aimed at child pornography, Congress compelled [via § 2257] producers of sexually explicit images to educate themselves—and others—about the ages of individuals appearing in the productions." *Id.* (emphasis added).

### C. Analysis of § 2257 in Light of Relevant Precedent

The United States Court of Appeals for the Sixth Circuit has interpreted three other statutes to determine whether they are regulatory in nature and therefore covered by the required records exception.

See *Underhill,* 781 F.2d 64 (15 U.S.C. § 1981 *et seq.*); *United States v. Alkhafaji,* 754 F.2d 641 (6th Cir.1985)(18 U.S.C. § 922(e)); *In re Grand Jury Subpoena to Custodian of Records, Mid–City Realty Co.,* 497 F.2d 218 (6th Cir. 1974)(Mich.Stat.Ann. §§ 19.803). In all of those cases, the Sixth Circuit found that the respective statutes were regulatory in nature. Section 2257, however, is readily distinguishable from the statutes at issue in those cases.

In *Underhill,* the Sixth Circuit found that a federal statute requiring car dealers to maintain records regarding odometer readings on their vehicles "serve[d] the overall purpose of enforcement of an essentially regulatory program." *Underhill,* 781 F.2d at 67.[13] Central to the Court's analysis was the fact that enforcement of the relevant statute "may be accomplished through either civil or criminal proceedings." *Id.* (internal quotation marks omitted)(emphasis added). In particular, the Sixth Circuit noted that the relevant statute, "in addition to criminal prosecutions

---

**12.** Similarly, the Sixth Circuit noted that:

> The Attorney General's Commission on Pornography reasoned that, because some pornographers deliberately use youthful-looking adult models, there needed to be a statute requiring producers of sexually explicit material to maintain records of age verification. The Commission also concluded that minors deserve special protection from the risks inherent in the production of pornographic materials and, therefore, individuals should be prohibited from employing, using, persuading, inducing, or coercing any minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct.

*Connection Distributing Co.,* 154 F.3d at 290 (internal citations to 1 Attorney General's Commission on Pornography, Final Report, 618–20 (1986) omitted).

**13.** The statute at issue in *Underhill* was the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981 *et seq.,* which "banned

tampering with or disconnecting odometers and required the Secretary of Transportation to prescribe rules mandating that any person who transfers a motor vehicle give written disclosure to the transferee of the mileage registered on the odometer and a notice if the odometer reading is known to be inaccurate." *Underhill,* 781 F.2d at 65 (citations omitted). According to the Court in Underhill:

> In order to insure compliance with the Act and to permit its enforcement, Congress also authorized the Secretary [of Transportation] to require automobile dealers to maintain records reasonably needed by the Secretary and to permit inspection of those records by designated federal officials. Pursuant to this statutory authority, the Secretary has mandated that automobile dealers retain for four years copies of all odometer statements they issue or receive. These statements must be kept at the dealer's primary place of business in a systematically retrievable order.

*Id.* at 65–66 (citations omitted).

... provides that individuals may bring civil actions for damages; the Attorney General and the states may seek injunctive relief; and the Secretary may impose a civil penalty." *Underhill,* 781 F.2d at 65–66 (citations omitted). Thus, the Court found, "the Act's record keeping requirements do not serve *only* criminal prosecution purposes." *Id.*

Unlike the statute at issue in *Underhill,* however, § 2257 may be enforced *only* through criminal penalties. *See* 18 U.S.C. § 2257(i). Specifically, those who are found to violate the provisions of § 2257 face up to five years imprisonment, in addition to fines. *Id.* In fact, the language of § 2257(i) makes a minimum of two years imprisonment mandatory for repeat violators. 18 U.S.C. § 2257(i) ("not more than 10 years but not less than 2 years"). No provisions of § 2257 provide for any methods of civil enforcement of the statute's requirements. Accordingly, unlike the statute in *Underhill,* § 2257 serves *only* criminal prosecution purposes.

The *Underhill* Court also found that the statute at issue was not "directed at a highly selective and inherently suspect" group of people. *Underhill,* 781 F.2d at 67. Rather, the Court noted that "there is nothing ordinarily criminally suspect about selling a motor vehicle, and in the vast number of cases we are confident that by complying with the Act, automobile dealers admit nothing criminal." *Id.,* 781 F.2d at 68.

Unlike the statute at issue in *Underhill,* however, § 2257 *is* targeted at a highly selective group inherently suspect of criminal activities—specifically, producers of media depicting sexually explicit conduct that utilizes performers who either are or appear to be minors. The mere fact that the record keeping requirements of § 2257 apply to all producers of media depicting sexually explicit conduct does not foreclose the possibility that it is targeted at a select group inherently suspect of criminal activities. Although the production and distribution of sexually explicit media is not *per se* illegal, the production and distribution of child pornography is illegal. As noted above, the Sixth Circuit has found that the stated purpose of § 2257 is to assist in the prosecution of child pornography, *Connection Distributing Co.,* 154 F.3d at 281, and that the record keeping requirements are targeted specifically at the producers of sexually explicit media that utilize youthful-looking actors who may or may not be minors. *See id.* at 290 ("[t]he Attorney General's Commission on Pornography reasoned that, because some pornographers deliberately use youthful-looking adult models, there needed to be a statute requiring producers of sexually explicit material to maintain records of age verification.").

The relevant Supreme Court cases analyzing the required records exception lend further support to the conclusion that § 2257 is targeted at a highly selective group inherently suspect of criminal activities. In *Haynes,* the relevant regulation found not to qualify for the required records exception required individuals to report their ownership of certain firearms thought to be utilized by criminals. *Haynes,* 390 U.S. at 87, 88 S.Ct. 722. Although the reporting requirements in § 2257 apply more broadly than those in *Haynes,* both statutes similarly target subgroups of people who engage in activities that are not *per se* illegal (production of pornography and gun ownership) in order to obtain information with which to prosecute them for illegal activities (production of child pornography and gun-related crimes).

While the threat of prosecution faced by producers of sexually explicit media under § 2257 is not as immediate as in *Albertson,* where the mere admission of membership in the Communist Party would have suf-

ficed to create a threat of prosecution, § 2257 does require the admission of crimes by individuals who illegally utilize minors in the production of sexually explicit materials. Moreover, the Supreme Court in *Albertson* noted that the requirements in that case were directed at a highly selective group inherently suspected of criminal activities, as opposed to requirements targeted at the public at large. *Albertson,* 382 U.S. at 79, 86 S.Ct. 194. Here, the requirements of § 2257 are similarly not targeted at the public at large. Additionally, the *Albertson* Court found that the fact that the inquiry was, as here, asserted in an area permeated with criminal statutes where responses might involve the petitioners in the admission of a crucial element of a crime influenced the finding that the statute was directed at a group inherently suspect of criminal activities. *See id.* at 79, 86 S.Ct. 194.

Moreover, producers of sexually explicit media face a similarly comprehensive set of federal and state prohibitions on certain types of sexually explicit media, namely child pornography and obscenity, as gamblers were noted to have faced in *Marchetti* and *Grosso*. *See Marchetti,* 390 U.S. at 48–49, 88 S.Ct. 697; *Grosso,* 390 U.S. at 64, 88 S.Ct. 709.

Section 2257 is further distinguishable from the statute at issue in *Underhill* because, by complying with the requirements of § 2257, producers of sexually explicit media who utilize performers under the age of 18 would be admitting their own criminal activity. By contrast, in *Underhill,* the regulations implementing the statute at issue merely required a written statement to the buyer of an automobile indicating the current odometer reading and a disclosure if the dealer knew that the reading was false. *See* 49 C.F.R. 580.7. Even if the dealer is aware that the odometer reading is false, however, proper compliance with those requirements does not necessarily implicate the dealer in any criminal activity, so long as the dealer was not the party guilty of altering the odometer reading.

Although the statute in *Underhill* provided for the possibility of criminal prosecution, the Court noted that such a possibility did not undermine what it found to be "the basic regulatory purpose of the statute; viz., to provide consumers with accurate automobile mileage information." *Underhill,* 781 F.2d at 68.[14] Section 2257, however, has no such underlying regulatory purpose. As noted by the Sixth and D.C. Circuits, and is clear from the face of the statute, the underlying purpose of § 2257 is to aid in the enforcement of criminal child pornography laws. Indeed, were it not illegal to utilize minors in sexually explicit media, then § 2257 would be a superfluous statute.

The *Underhill* Court further noted that the relevant statute was not "incriminating on its face" because it did not "requir[e] a person to keep documents of *illegal* activi-

---

**14.** As evidence of the purpose of the statute, the *Underhill* court cited 18 U.S.C. § 1981, entitled "Congressional Findings and Statement of Purpose," which read:

The Congress hereby finds that purchasers, when buying motor vehicles, rely heavily on the odometer reading as an index of the condition and value of such vehicle; that purchasers are entitled to rely on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle; that an accurate indication of the mileage traveled by a motor vehicle assists the pur-

chaser in determining its safety and reliability; and that motor vehicles move in the current of interstate and foreign commerce or affect such commerce. It is therefore the purpose of this subchapter to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers.

15 U.S.C. § 1981 (1993) *repealed by* Pub.L. 103–272, § 7(b), July 5, 1994, 108 Stat. 1379.

ties and if such records of *illegal* activities are not kept that the same be designated as a crime." *Underhill*, 781 F.2d at 69 (citations omitted). Section 2257, by contrast, *does* require producers to keep records of illegal activities, where producers utilize minors in the production of sexually explicit materials. Simply put, if producers who utilize minors do not keep the records required by § 2257, they may be prosecuted for the failure to keep those records, whereas if they do keep such records, they will have admitted criminal activity and may be prosecuted based upon that admission.

The Sixth Circuit also addressed the question of whether the required records exception applied in *United States v. Alkhafaji*, 754 F.2d 641 (6th Cir.1985), where it rejected the Fifth Amendment defense of a defendant convicted under 18 U.S.C. § 922(3) for carrying firearms in his suitcase on an international flight without providing the airline with written notice as required by 18 U.S.C. § 922(e). *Id.* at 642–43. The Court noted that the statute at issue in *Alkhafaji* fell "somewhere between the statutes considered in the *Albertson* line and the one at issue in *Byers*."

*Id.* at 647.[15] Although the *Alkhafaji* court found weapons and ammunition to be an area permeated with criminal statutes, it determined that the statute was not targeted at a highly selective and inherently suspect group of people, since it applied to "all persons who ship firearms or ammunition to someone other than a licensed importer, dealer, manufacturer or collector," many of whom would not be acting unlawfully. *Id.* The Court further found that "[t]his general requirement cannot be held to violate an individual passenger or shipper's constitutional right *solely* because compliance might supply evidence of *other* criminal activity." *Id.* (emphasis added).

Here, as in *Alkhafaji*, Section 2257 falls into an area "permeated with criminal statutes." *Albertson*, 382 U.S. at 79, 86 S.Ct. 194; *see also Curran v. Price*, 334 Md. 149, 638 A.2d 93, 96 (1994)(finding statute fell within area permeated with criminal statutes for purpose of required records exception analysis because it was codified within state criminal law code, its purpose was the amelioration of the effects of criminal behavior, and it was aimed at a select group inherently suspect of criminal activities.).[16] As noted by the D.C. Circuit,

**15.** The relevant statute in *Alkhafaji*, 18 U.S.C. § 922(e), provided that:

It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter.
*Alkhafaji*, 754 F.2d at 646.

**16.** In *Curran*, the Maryland Supreme Court found that a statute enacted to prevent criminals from profiting from their crimes by selling their stories in mass media did not serve a sufficient regulatory purpose to qualify for the required records exception. *Curran v. Price*, 334 Md. 149, 638 A.2d 93, 96 (1994). The statute at issue in *Curran* required a person who entered into a "notoriety of crimes" contract, as defined by the statute, to "submit a copy of the contract or summary of the terms of an oral agreement to the Attorney General ... and ... [p]ay over to the Attorney General any moneys or other consideration ... which would otherwise be owing to the defendant." *Id.*

§ 2257 was designed to "facilitate enforcement of the federal criminal laws aimed at child pornography" in response to a problem that "hindered prosecution of child pornography offenses." *American Library Ass'n v. Barr,* 956 F.2d at 1182. Additionally, as noted above, § 2257 is part of a comprehensive criminal enforcement regime targeted at eliminating the serious problem of child pornography.

Section 2257 also applies to all producers and distributors of pornography, many of whom, as in *Alkhafaji,* will be acting legally. However, the *Alkhafaji* Court distinguished disclosure statutes held to violate the Fifth Amendment privilege in *Albertson, Marchetti, Haynes,* and *Grosso,* from the statute at issue in *Alkhafaji* because those statutes "had as their primary purpose facilitation of the enforcement of particular criminal laws," whereas § 922(3) was "primarily a regulatory statute, enacted to assist common carriers in their duty not to transport weapons and ammunition under conditions which violate other laws." *Id.* In making that finding, the Court looked to the legislative history of § 922, which the Court found to be "to inform the [air] carrier of the character of the items it was shipping thus placing on it the duty to inquire into the legality of the shipment." *Id.* (citations omitted).

As noted above, however, no such regulatory purpose exists for § 2257. Rather, the purpose of § 2257, as noted by the Sixth and D.C. Circuits, is to facilitate the enforcement of criminal laws prohibiting child pornography.

Moreover, the *Alkhafaji* court noted that statutes considered to violate the Fifth Amendment privilege generally required a report to a government agency, whereas the statute considered in *Alkhafaji* only required a report to the air carrier, making "the likelihood that required disclosures will be incriminating ... much less substantial." *Id.* at 647–48. Section 2257 requires producers and distributors of pornographic materials to furnish their records directly to a government agency, which plainly increases the likelihood that the disclosures will be incriminating.

The Sixth Circuit also found a statute to be regulatory in nature in *In re Grand Jury Subpoena to Custodian of Records, Mid–City Realty Co.,* 497 F.2d 218 (6th Cir.1974), where the relevant statute focused upon "investigating applicants, salesmen and real estate brokers on a variety of practices" and provided a scheme that required records of funds deposited into escrow accounts to be kept. *Id.* at 220. The Court in *Mid–City Realty* found the statute to be regulatory in nature because "[s]uch records can become harmful—criminal in nature—only when the provisions of the statute are not complied with." *Mid–City Realty,* 497 F.2d at 220.[17]

Here, unlike in *Mid City Realty,* the relevant records can become the basis of a criminal prosecution even if a producer fully complies with § 2257. For example, were a producer to utilize a minor in sexually explicit media and properly record that minor's age in records required to be kept under § 2257, those records could be used in a prosecution under any statute in Chapter 71 or 110 of the United States Code. *See* 18 U.S.C. § 2257(d)(2). Even if it were found that the records could not be used in a subsequent prosecution, prosecutors could utilize the name and contact information of a performer required to be

---

**17.** In *Mid–City Realty,* the relevant statute, Mich.Stat.Ann. § 19.803 (Supp.1973), provided, in pertinent part:

Every real estate broker shall keep records of all funds deposited [in escrow accounts]

.... All such records shall be subject to inspection by the commissioner or his deputies and by employees of the commission.

kept under § 2257 to contact that performer and obtain his or her testimony against the producer who employed that person. Accordingly, information furnished pursuant to § 2257 could provide a valuable "link in the chain" to prosecution which the Supreme Court has found to counsel in favor of ruling that the required records exception does not apply. *Marchetti,* 390 U.S. at 48–49, 88 S.Ct. 697.

The United States Court of Appeals for the Seventh Circuit also addressed the question of whether a statute's purpose is regulatory or criminal in *Bionic Auto Parts and Sales, Inc. v. Fahner,* 721 F.2d 1072, 1082 (7th Cir.1983). In *Bionic,* the Seventh Circuit found that a statute that required auto parts dealers to record whether a serial number had been defaced on parts that it sold did not serve a regulatory purpose because its purpose could "only be viewed as related to the detection of criminal wrongdoing." *Bionic,* 721 F.2d at 1082–83; *but see United States v. Lehman,* 887 F.2d 1328, 1333 (7th Cir.1989)(finding statute passed to monitor middlemen who arranged sale and shipment of cattle to be valid regulatory scheme). Similarly, § 2257 does not serve a regulatory purpose because it was enacted to assist in the detection of illegal child pornography.

The *Bionic* court found that the determinative factors in analyzing whether the statute served a regulatory purpose were that "the requirement in question is both directly incriminatory and aimed at a select group suspected of criminal activities." *Bionic,* 721 F.2d at 1083. According to *Bionic,* because it is illegal to sell auto parts with imperfect serial numbers, "[r]ecording that a serial number has been defaced or altered, without more, subjects the automotive parts proprietor to criminal

penalties." *Id.* Here, the Court has found that § 2257 is targeted at a select group suspected of criminal activities. Moreover, although the requirements of § 2257 are not directly incriminatory in all cases, as in *Bionic,* § 2257 does require producers and distributors to maintain records of illegal activity that would be directly incriminatory.

For all of the above reasons, the Court finds that § 2257 is not regulatory in nature. Rather, § 2257 is part of a comprehensive, criminal enforcement scheme that targets a group that is inherently suspect of criminal activities and is aimed at eliminating the serious problem of child pornography—an area permeated with criminal statutes. The first requirement for the required records exception to apply therefore has not been met. Accordingly, the required records exception does not apply in this case. Petitioners' Fifth Amendment rights to be free from self-incrimination therefore bar the government from compelling the production of the requested documents.[18]

## III. CONCLUSION

For the foregoing reasons, Petitioners' motions to quash the relevant subpoenas duces tecum are GRANTED.

---

18. Having found that § 2257 does not meet the first requirement of the required records exception, the Court need not address whether the second and third requirements have been met.